**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

STROUD PRODUCTIONS AND ENTERPRISES, INC. AND ANDREW B. STROUD,

Plaintiffs,

v.

CASTLE ROCK ENTERTAINMENT, INC. WARNER BROS. ENTERTAINMENT INC., AND WARNER INDEPENDENT PICTURES, INC.,

Defendants

No. 09-cv-03796 JSW (NC)

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 104

This action is one of four cases pending before the Court involving disputes regarding the ownership rights to recordings by the late jazz singer Nina Simone. Specifically, this case arises out of defendants' allegedly unauthorized use of the copyrighted sound recording "Just in Time" by Nina Simone in the motion picture "Before Sunset." Defendants' motion for default judgment was referred for report and recommendation to the undersigned Magistrate Judge. The undersigned RECOMMENDS to the District Court to GRANT defendants' motion for default judgment and DISMISS plaintiffs' claims for copyright infringement and unfair competition WITH PREJUDICE.

## I. BACKGROUND

### A. The Parties and the Facts Alleged in the Underlying Dispute

The complaint alleges that plaintiffs Andrew B. Stroud and Stroud Productions and Enterprises, Inc. ("SPE") were musical producers that produced recordings of songs performed by Nina Simone. Dkt. No. 1-1 at 2.[1] Andrew B. Stroud was the sole shareholder and President of SPE.[2] *Id.* Plaintiffs claim that they own the song recording, including the copyright therein, embodying the performance by Nina Simone of the composition titled "Just in Time." *Id.* at 3. The complaint alleges that the copyright filed for by plaintiffs in connection with "Just in Time" is titled "Nina Simone Sings Billie Holiday" and was filed with the U.S. Copyright Office on or about January 22, 1973. *Id.* The complaint further alleges that Andrew B. Stroud was Nina Simone's producer at the time Nina Simone gave the subject performance of the song, "Just in Time," and that a recording of the performance was maintained by Andrew B. Stroud. *Id.* at 3-4. Plaintiffs allege that several years before filing this action, they licensed "Just in Time" for a limited period, but that those licenses have expired and all rights are held by plaintiffs. *Id.* at 4.

Plaintiffs claim that defendants Castle Rock Entertainment, Inc., Warner Bros. Entertainment Inc., and Warner Independent Pictures, Inc. used "Just in Time" in the motion picture titled "Before Sunset" and the accompanying soundtrack without entering into any license agreement for the subject sound recording with plaintiffs and continue to commercially exploit the film. *Id.* at 4-5. The complaint asserts two causes of action: "for infringement of copyright arising under the copyright laws of the United States, Title 17 of the United States Code and for unfair competition under § 43 (a) of the Lanham Act (15 U.S.C. § 1125(a))." *Id.* at 4-6. Plaintiffs seek an injunction, disgorgement of profits, monetary damages, punitive damages, and attorneys' fees. *Id.* at 5-6, 7.

//

[1] Unless otherwise indicated, all references to docket numbers in this order are to the docket in this case (*Stroud v. Castle Rock*).

[2] SPE was dissolved in 1981. Dkt. No. 115 at 17, 68; Dkt. No. 452 at 1, No. 08-cv-02348 JSW.

**B. Procedural History**

Plaintiffs initiated this action on October 5, 2007, in the Southern District of New York, No. 07-cv-08638. Dkt. No. 105 at 2, 4-12. Plaintiffs amended the complaint on October 31, 2007. Dkt. Nos. 1-1; 105 at 2, 5, 14-24. Defendants filed their Answer and Affirmative Defenses on December 21, 2007. Dkt. No. 105 at 2, 26-34.

**1. The *Brown v. Stroud* Action**

On May 7, 2008, Steven Ames Brown filed a complaint against Andrew B. Stroud, an individual, and SPE, in this Court, seeking declaratory relief regarding the ownership of certain Nina Simone recordings ("*Brown v. Stroud* action"). Dkt. No. 1 at 1, No. 08-cv-02348 JSW. In his operative, first amended complaint Brown alleges that, by virtue of a written contract he entered into on July 30, 1990, with Nina Simone, he obtained a 40% ownership interest in approximately 104 sound recordings ("the Masters") authored by Nina Simone. Dkt. No. 35 at 2, No. 08-cv-02348 JSW. According to the complaint, title to 52 of the Masters was disputed by various defendants in prior litigation based on chains of title that purportedly began with Andrew B. Stroud and/or SPE. *Id.* Brown alleges that the song "Just in Time" was first fixed prior to February 15, 1972, and was one of the disputed masters. *Id.* at 3, 5. In February 2004, Brown and the Simone Estate licensed "Just in Time" for use in the soundtrack of the motion picture "Before Sunset." *Id.* at 3. The closing credits of "Before Sunset" listed Brown and the Simone Estate as the licensors of "Just in Time." *Id.* Brown's first amended complaint asserted two claims for relief, for declaratory relief as to the ownership of the disputed Masters, and copyright infringement under the common law and California Civil Code § 980(a)(2) as a result of Andrew B. Stroud and SPE's sale to the public of digital copies of "Just in Time" without Brown's consent. *Id.* at 4-5.

**2. The Transfer and Stay of the *Stroud v. Castle Rock* Action**

On July 2, 2009, plaintiffs in this action moved to transfer venue from the Southern District of New York to the Northern District of California under 28 U.S.C. § 1404(a). The motion argued that "there is simply no question that this action could have been brought in

the Northern District of California" and that, "[a]s the center of gravity of the litigation over Simone's Master recordings has shifted from the East to the West Coast, it is respectfully submitted that this case should follow . . . to allow the cases to be resolved in a consistent, efficient and integrated manner." Dkt. No. 21 at 5, 10, No. 07-cv-08638. In a declaration submitted in support of the motion to transfer venue, Andrew B. Stroud stated that the reason for seeking transfer of venue was to avoid having to "litigate multiple matters which involve the same underlying rights on opposite sides of the country" and "so that [he] may offer proof that will show [he] ha[s] been damaged and [he is] the rightful owner of certain master recordings which Brown and the Estate have improperly licensed, including *Just in Time*." Dkt. No. 22 at 3-4, No. 07-cv-08638 (S.D.N.Y.).

On August 4, 2009, the District Court for the Southern District of New York granted the motion, concluding that this action "might have been brought" in the Northern District of California and that venue was proper in this Court. Dkt. No. 105 at 2, 36-40; Dkt. No. 33 at 2-3, No. 07-cv-08638 (S.D.N.Y.). The Court further found that, as conceded by the parties, the outcome in the *Brown v. Stroud* action will be dispositive of the claims at issue in this case because the "Just in Time" sound recording is but one of numerous sound recordings whose copyright ownership is at issue in the *Brown v. Stroud* action and the ownership rights as determined in that action will bear directly on whether defendants' use of "Just in Time" constituted copyright infringement. Dkt. No. 105 at 39-40. After the transfer, this Court related the *Stroud v. Castle Rock* action to *Brown v. Stroud*. Dkt. No. 23. Plaintiffs took the position that the cases are related. Dkt. No. 13 at 2.

On December 7, 2009, plaintiffs' counsel moved to withdraw. Dkt. No. 25. On March 25, 2010, the Court held a case management conference at which plaintiffs' counsel appeared and the Court granted the motion to withdraw as counsel on the condition that former counsel will continue to receive filings on behalf of plaintiffs until they obtain a new lawyer. Dkt. No. 46. On March 26, 2010, the Court ordered Andrew B. Stroud to show cause why this action should not be stayed pending the outcome of *Brown v. Stroud*. Dkt. No. 45. On May 19, 2010, the Court issued an order staying the action upon consent

of the parties. Dkt. No. 50. On March 18, 2011, Methven & Associates appeared as counsel for plaintiffs. Dkt. No. 53.

On July 22, 2011, Andrew B. Stroud and Andy Stroud, Inc. ("ASI") filed their operative Fourth Amended Counterclaims against Brown and the Simone Estate in *Brown v. Stroud* for (1) declaratory judgment that Andrew B. Stroud and ASI are the exclusive owners of the disputed recordings; (2) copyright infringement; (3) vicarious copyright infringement; (4) contributory copyright infringement; (5) violation of the Digital Millennium Copyright Act; and (6) copyright infringement under California law. Dkt. No. 297, No. 08-cv-02348 JSW. For the first time in the fifth iteration of their counterclaims, Andrew B. Stroud and ASI alleged that in 1981, when SPE dissolved, all its rights and ownership interests reverted to ASI. Dkt. No. 337 at 2, No. 08-cv-02348 JSW.

On these facts, Brown and the Simone Estate moved to dismiss the entirety of the counterclaims as against Andrew B. Stroud and SPE on the basis that Andrew B. Stroud and SPE have no ownership interest in the disputed copyrights. *Id.* at 4. The Court granted Brown and the Simone Estate's motion on this ground, and held that, in light of the duration and scope of the litigation between the parties regarding the ownership rights over the disputed recordings and the number of times the counterclaims were amended and switched as to who is asserting ownership rights, dismissal with prejudice was warranted. *Id.* at 5.

The Court further dismissed all counterclaims brought in the name of ASI, holding that it was not properly joined as a party. *Id.* at 6. The Court noted that, on September 26, 2008, before Andrew B. Stroud and SPE filed their first counterclaim in this action, ASI and Andrew B. Stroud sued Brown and the Simone Estate in the United States District Court for the Southern District of New York, claiming that ASI and Stroud owned the disputed recordings. *Id.* at 3 (citing *Andy Stroud, Inc. v. Brown*, No. 08-cv-08246, 2009 WL 539863, at *1, *2, *10 (S.D.N.Y. Mar. 4, 2009)).[3] The Court concluded that, in light

[3] The Southern District of New York granted Brown's motion to dismiss that case without prejudice under the prior pending action doctrine, to allow the issues to be resolved in this action.

of Andrew B. Stroud's knowledge of his own companies, and the fact that he and his attorneys actually filed a lawsuit three years ago by ASI regarding the same disputed recordings, the failure to name ASI sooner in this action was not an "understandable mistake." *Id.* at 6. The Court held that, if SPE and Andrew B. Stroud sought to add ASI as a party, they needed to file a properly noticed motion setting forth extremely good cause to add ASI and to further amend their pleadings for a sixth time. *Id.* at 7. No such motion was filed.

**3. The *Kelly v. Roker* Action**

On December 2, 2011, Lisa Simone Kelly, as the duly appointed administrator of the of Simone Estate, commenced a separate action in this Court against Andrew B. Stroud, ASI, Wally Roker, and two businesses allegedly owned and controlled by Roker, ICU Ent. Dist. and Wally Roker Music. Dkt. No. 1, No. 11-cv-05822 JSW ("*Kelly v. Roker*"). The complaint alleges that, on October 17, 2011, Kelly was informed by Andrew B. Stroud's counsel, Methven & Associates, that all of Nina Simone's recordings in Andrew B. Stroud's possession, custody, or control had been "sold" to the Roker defendants for no consideration pursuant to a "Music and Artifact Agreement" dated October 1, 2011. *Id.* at 4. The complaint in the *Kelly v. Roker* action asserts several claims arising from the alleged fraudulent conveyance, disposal, and/or spoliation of the Nina Simone recordings subject to the pending *Brown v. Stroud* litigation. *Id.* at 3. On December 20, 2011, the Court issued an order finding the *Kelly v. Roker* action related to *Brown v. Stroud*. Dkt. No. 6, No. 11-cv-05822 JSW.

**4. The Substitution of Scarlett Stroud and the Imposition of Sanctions**

On May 4, 2012, Methven & Associates moved to withdraw as counsel for Andrew B. Stroud, ASI, and SPE. Dkt. No. 59. On July 14, 2012, Andrew B. Stroud passed away. Dkt. No. 115 at 17, 30. On July 26, 2012, ASI was dissolved. *Id.* at 17, 66-67. On August 24, 2012, Brown and the Simone Estate moved to substitute Andrew B. Stroud's surviving spouse designated as sole beneficiary and executrix in his will, Scarlett Stroud, in the

decedent's place in both *Brown v. Stroud* and *Kelly v. Roker*. Dkt. No. 459, No. 08-cv-02348 JSW. On October 4, 2012, the Court granted the motion as unopposed, substituting Scarlett Stroud for Andrew B. Stroud. Dkt. No. 470, No. 08-cv-02348 JSW.

On October 31, 2012, the Court granted Methven & Associates' motion to withdraw as counsel upon the condition that Methven & Associates continue to receive service of all documents for ASI and SPE until substitute counsel makes an appearance or until ASI and SPE are terminated as parties. Dkt. No. 84 at 2.

The Court further admonished the parties that ASI and SPE are corporations and, thus, could not represent themselves. *Id.* The Court ordered ASI and SPE to show cause as to whether they intended to find alternate counsel and, if not, "why judgment should not be entered against them on the claims against them and why their affirmative claims should not be dismissed for failure to prosecute." *Id.* The Court informed ASI and SPE that if they needed more time to find an attorney to provide a response to the order to show cause, the Court would consider such a request. *Id.* With respect to Scarlett Stroud as the representative of the Stroud Estate, the Court noted that it was not yet clear whether she could proceed pro se or needed to retain counsel in order to appear on behalf of the estate. *Id.* at 3. The Court informed Scarlett Stroud that an attorney must represent a personal representative of an estate where the estate has multiple beneficiaries and creditors. *Id.* The Court ordered Scarlett Stroud to show cause in writing whether she intended to appear pro se or through new counsel, and, if she intended to proceed pro se, to demonstrate that she was the sole beneficiary to the Stroud Estate and that there were no other beneficiaries or creditors. *Id.* Alternatively, if Scarlett Stroud intended to obtain new counsel, the Court ordered her to state by when such counsel will make an appearance on behalf of the Stroud Estate. *Id.* at 4. The Court admonished Scarlett Stroud that her failure to timely respond to the order to show cause, and obtain new counsel if necessary, "will result in dismissal of the estate's affirmative claims for failure to prosecute and judgment being entered against the estate on the claims against it." *Id.* The Court further ordered Scarlett Stroud to pay the sanctions imposed against Andrew B. Stroud by no later than November 21, 2012, and

admonished her that failure to comply with that order could result in further sanctions being imposed, including an order of contempt. *Id.*

ASI, SPE, and Scarlett Stroud all failed to respond to the order to show cause within the deadline set by the Court. Dkt. No. 87 at 2. In an order issued January 17, 2013, the Court noted sanctions were warranted against ASI, SPE, and Scarlett Stroud as the representative of the Stroud Estate, both due to their failure to respond and, based on their lack of representation by counsel, their inability to proceed in Court. *Id.* The Court observed that "[w]ith respect to the claims against ASI, SPE and the Estate of Andrew Stroud, the proper sanction is the striking of any answers that have been filed and the entry of default against them." *Id.* However, the Court found that its initial order to show cause had not provided sufficient notice of the precise sanction. *Id.* Therefore, the Court issued a further order to show cause to ASI, SPE and Scarlett Stroud to demonstrate in writing by no later than February 5, 2013, "why the answers filed by ASI, SPE, and Andrew Stroud should not be stricken and default be entered against ASI, SPE, and the Estate of Andrew Stroud." *Id.* The Court admonished ASI, SPE, and Scarlett Stroud that their failure to respond to the further order to show cause "will result in the answers filed by ASI, SPE, and Andrew Stroud being stricken and default entered against them" and that "the affirmative claims by ASI, SPE, and the Estate of Andrew Stroud . . . will be dismissed for failure to prosecute without further notice." *Id.*

In the afternoon of the day the responses to the further order to show cause were due, W. Charles Robinson, as counsel for Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in her capacity as executrix of the Stroud Estate, sought an extension of time to respond to the order to show cause on the basis that he needed time to familiarize himself with the litigation. Dkt. No. 97 at 6; *see also* Dkt. No. 503, No. 08-cv-02348 JSW. On February 14, 2013, the Court issued an order denying the request for extension and imposing terminating sanctions. Dkt. No. 97. The Court found that, in light of Robinson's long-time representation and involvement with Andrew B. Stroud, Scarlett Stroud, ASI, and SPE, there was no excuse for Scarlett Stroud's, ASI's, and SPE's continued delay and failure to

respond to the Court's orders. *Id.* at 5. The Court further noted that despite clear and explicit orders, the sanctions imposed "due to Andrew Stroud's inappropriate gamesmanship and conduct designed to obfuscate, delay, and avoid responding to valid discovery requests in bad faith or willful misconduct still ha[d] not been paid." *Id.* Therefore, the Court found that terminating sanctions were "warranted due to the bad faith of counsel and of the Stroud parties, their repeated gamesmanship and misconduct, their blatant disregard of the Court's orders, the Court's need to manage its docket, and the need to prevent prejudice to the other parties in this litigation who have been diligently attempting to litigate these cases." *Id.* at 5-6. The Court dismissed "all affirmative claims by the estate of Andrew Stroud, ASI and SPE[,]" struck "any answers that have been filed by these parties" and entered default against them. *Id.* at 6. The Court ordered the parties who were defending claims by the Stroud Estate, ASI, and SPE in the three related matters to file motions for default judgment by March 15, 2013. *Id.*

On March 7, 2013, the Court granted Robinson's applications to appear pro hac vice on behalf of Scarlett Stroud and the Stroud Estate. Dkt. Nos. 99, 100. On March 18, 2013, Robinson filed a motion for reconsideration of the Court's order imposing sanctions and the related orders leading up to that order on behalf of the Stroud Estate, ASI, and SPE. Dkt. Nos. 107, 108.[4] The motion for reconsideration argued that there was no personal jurisdiction over Scarlett Stroud on the basis that she was not properly served with the motion to substitute and that she was not properly substituted in as the representative of the Stroud Estate. Dkt. No. 108 at 13. The declaration by Robinson submitted in support of the motion for reconsideration also argued that the motion for extension of time should have been granted and that the default order should be vacated because there is no support

[4] In an order issued April 2, 2013, the Court noted that Robinson purported to file the motion for reconsideration on behalf of SPE and ASI, despite the fact that he had filed pro hac vice applications only on behalf of Scarlett Stroud and the Stroud Estate. Dkt. No. 116. The Court stated that, unless and until Robinson properly filed pro hac vice applications on behalf of SPE and ASI, and the Court granted such applications, he could not appear on behalf of SPE and ASI and, thus, did not have the authority to file motions on their behalf. *Id.*

for the finding that Robinson has had a long-time representation and involvement with the Stroud parties and there is no showing of bad faith by the Stroud parties. Dkt. No. 107-1 at 7-8, 10. In an order issued May 8, 2013, the Court found that service on Scarlett Stroud was sufficient and denied the motion for reconsideration on this ground. Dkt. No. 121 at 4. The Court further found that it should not have substituted in Scarlett Stroud as the representative of the Stroud Estate until November 20, 2012, when the New York Probate Court issued letters testamentary designating Scarlett Stroud as the executor of the Stroud Estate. *Id.* at 5. Although the Court granted the motion for reconsideration to the extent Scarlett Stroud was substituted in before November 20, 2012, the Court found no basis for vacating the sanctions which were not imposed until after Scarlett Stroud was a proper party to this action. *Id.* at 5-6.

**5. The Interpleader Action**

On March 8, 2013, Methven & Associates filed an action for interpleader under 28 U.S.C. § 1335 against Scarlett Stroud[5] as administrator of the Stroud Estate, ASI, SPE, Lisa Simone Kelly as administrator of the Simone Estate, Wally Roker d/b/a ICU Ent Dist. and d/b/a Wally Roker Music, Brown, Castle Rock Entertainment, Warner Bros. Entertainment, Inc., Warner Bros. Independent Pictures, and Sony Music Entertainment, Inc. ("the interpleader action"). Dkt. No. 1, No. 13-cv-01079 JSW. The interpleader action seeks to adjudicate the defendants' claims relating to ownership of property identified in an attachment to the complaint which includes original audio and video recordings of Nina Simone. *Id.* ¶ 13. The complaint alleges that, during the course of providing legal representation to Andrew B. Stroud, Stroud shipped the property subject to the interpleader action to Methven & Associates so that it could produce the items as discovery. *Id.* ¶¶ 17, 19. The property was not reclaimed by Andrew B. Stroud and was left in the possession of Methven & Associates after he passed away. *Id.* ¶ 20. On March 20, 2013, the Court issued an order relating the interpleader action to *Stroud v. Castle*

[5] Scarlett Stroud is named in the interpleader action as "Scarlett Paradies-Stroud." *Id.*

*Rock*, *Brown v. Stroud*, and *Kelly v. Roker*. Dkt. No. 6, No. 13-cv-01079 JSW. On January 21, 2014, the Court granted the motion of Methven & Associates for leave to deposit the property with the Court. Dkt. No. 95, No. 13-cv-01079 JSW.

On December 19, 2013, District Court Judge Jeffrey S. White issued an order revoking the pro hac vice status of W. Charles Robinson, counsel for Scarlett Stroud as the administrator of the Stroud Estate, ASI, and SPE, as a sanction for disregarding the Local Rules and orders of the Court. Dkt. No. 86 at 1-2, No. 13-cv-01079 JSW. Because ASI and SPE are corporations and cannot represent themselves, the Court ordered them to obtain new counsel and have such new counsel file an appearance by January 17, 2014. *Id.* at 2. The Court ordered Scarlett Stroud to provide a written statement as to whether she intends to appear pro se or through new counsel by January 17, 2014. *Id.* at 2-3.

Scarlett Stroud, ASI, and SPE have not complied with the Court's order. Instead, on December 30, 2013, Robinson filed an appeal to the Ninth Circuit from the order granting leave to deposit the property on behalf of Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in her capacity as executrix of the Stroud Estate. Dkt. No. 88, No. 13-cv-01079 JSW. On February 3, 2014, Robinson filed an appeal from the order granting leave to deposit the property on behalf of Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in her capacity as executrix of the Stroud Estate. Dkt. No. 99, No. 13-cv-01079 JSW.

**6. The Motion for Default Judgment**

On March 15, 2013, the defendants in this case filed their motion for default judgment. Dkt. No. 104. Defendants served the motion, including the supporting declaration by Dorothy Weber and proposed order, on Robinson by first class mail on March 15, 2013. Dkt. No. 109. Additionally, on March 20, 2013, defendants served the same documents by first class mail on SPE, "Attn: SCARLETT PARADIES-STROUD." Dkt. No. 111. On March 29, 2013, Robinson filed a single opposition to the motions for default judgment filed in the related cases, *Stroud v. Castle Rock*, *Brown v. Stroud*, and *Kelly v. Roker*, on behalf of all of the Stroud parties. Dkt. No. 115. On June 4, 2013, Judge White referred the motions for default judgment in the three related cases to the

undersigned Magistrate Judge for a report and recommendation. Dkt. No. 122.

The next day after the referral of the motions for default judgment, the Stroud parties filed an appeal to the Ninth Circuit in each of the three related cases. Dkt. No. 123; Dkt. No. 567, No. 08-cv-02348 JSW; Dkt. No. 171, No. 11-cv-05822 JSW. The notice of appeal states that it is appealing the order(s) of the District Court, entered in these cases on May 8, 2013, "denying Stroud's Motions for reconsideration of the District Court's order substituting the Executrix for the Estate of ABS along with any subsequent order(s) regarding motions for default judgment filed against Stroud" in these cases "as a consequence of the denial of Stroud's Motions for reconsideration." *Id.* As ordered by the undersigned, the parties moving for default judgment briefed the issue of whether Stroud's notices of appeal divested the District Court of jurisdiction and the Stroud parties responded in a brief filed by Robinson. Dkt. Nos. 127, 130.

The undersigned held a hearing on the motions for default judgment on September 4, 2013. Dkt. No. 134. The Stroud parties did not appear at the hearing.

On September 10, 2013, the Ninth Circuit Court of Appeals issued its mandate dismissing the appeal in this case due to counsel's failure to perfect the appeal. Dkt. Nos. 135, 136.

## II. LEGAL STANDARD

Defendants here move for default judgment against plaintiffs SPE, Andrew B. Stroud, and Scarlett Stroud as the representative of the Stroud Estate pursuant to Federal Rules of Civil Procedure 55(b) and 41(b). Dkt. No. 104 at 2.

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case against a defendant against whom a default has been entered, unless the defendant is a minor or an incompetent person, or is in military service. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the

plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2).

Pursuant to Federal Rule of Civil Procedure 41(b) the Court may dismiss an action or a claim if "the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). In determining whether to dismiss a case under Rule 41(b), "the district court must weigh five factors including: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.'" *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (citations omitted). "Dismissal with prejudice under Rule 41(b) for failure to prosecute is the converse of a default judgment. In both instances, the consequence of the attorney's action (or inaction) is a loss of the case on the merits. The only significant difference is that the plaintiff rather than the defendant suffers the adverse judgment." *Lal v. California*, 610 F.3d 518, 524-25 (9th Cir. 2010); *see also United States v. Approximately $73,562 in U.S. Currency*, No. 08-cv-2458 SBA, 2011 WL 108509, at *2 n.2 (N.D. Cal. Jan. 12, 2011) ("Though not identical, the relevant inquiry germane to a Rule 41(b) dismissal is largely coextensive with the analysis applicable to a motion for default judgment.").

//

## III. DISCUSSION

### A. Jurisdiction

When presented with a motion for default judgment, the Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Additionally, the Court must assess the adequacy of process on the party against whom default is requested. *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW (EMC), 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007) (citations omitted).

Here, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and § 1338 because the complaint alleges infringement of copyright arising under the copyright laws of the United States, Title 17 of the United States Code and for unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Dkt. No. 1-1 at 2.

As an initial matter, the District Court was not divested of jurisdiction as a result of plaintiffs' notice of appeal. While, as a general rule, a proper notice of appeal transfers jurisdiction of a case from the district court to a court of appeals, the filing of an appeal from a non-appealable order does not divest the district court of jurisdiction. *Ruby v. Sec'y of U. S. Navy*, 365 F.2d 385, 388-89 (9th Cir. 1966). An order that simply enters a party's default is not a final appealable order. *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981). Therefore, the Stroud parties' notice of appeal from the May 8, 2013, order did not divest this Court of jurisdiction. Furthermore, the Ninth Circuit Court of Appeals has now issued its mandate dismissing plaintiffs' appeal on September 10, 2013. Dkt. Nos. 135, 136.

Additionally, the Court has personal jurisdiction over plaintiffs. Personal jurisdiction, "simply stated, is the power of a court to enter judgment against a person." *Sec. & Exch. Comm'n*, 504 F.3d at 1138. Here, plaintiffs initiated this action for copyright infringement

and unfair competition in the Southern District of New York, and moved to transfer venue to this Court, taking the position that the outcome in the *Brown v. Stroud* action will be dispositive of the claims at issue. Plaintiffs further moved for reconsideration of the Court's orders leading to the entry of default, and opposed the pending default judgment motion without raising an objection based on personal jurisdiction (aside from the argument that the Court had no personal jurisdiction over Scarlett Stroud because she was not properly served with the motion to substitute, which Judge White rejected). *See* Dkt. Nos. 107, 108, 115, 121. Accordingly, the Court finds that any such objections have been waived and that plaintiffs have consented to this Court's exercise of personal jurisdiction over them. *See S.E.C.*, 504 F.3d at 1149 ("[A] party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties."); *see also Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff."); *see also Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended by* 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction. . . 'An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear.'" (citations omitted)). The jurisdictional prerequisites are thus satisfied.

Additionally, none of the plaintiffs are a minor or incompetent person or in military service. *See* Fed. R. Civ. P. 55(b); 50 U.S.C. app. § 521(b)(1); Dkt. No. 105 ¶ 2; 115 at 17, 30-35, 39, 66-68.

//

Finally, plaintiffs were adequately served with a notice of the motion for default judgment in accordance with Federal Rule of Civil Procedure 55(b)(2), and filed an opposition to the motion. *See* Dkt. Nos. 109, 111, 115.

**B. Default Judgment**

Defendants in this case seek entry of judgment against plaintiffs, ordering that plaintiffs' claims for copyright infringement and unfair competition are dismissed with prejudice. Dkt. No. 104 at 2. In his February 14, 2013, order, Judge White already dismissed "all affirmative claims by the estate of Andrew Stroud, ASI and SPE," and entered default against them. Dkt. No. 97. Judge White expressly found that terminating sanctions were "warranted due to the bad faith of counsel and of the Stroud parties, their repeated gamesmanship and misconduct, their blatant disregard of the Court's orders, the Court's need to manage its docket, and the need to prevent prejudice to the other parties in this litigation who have been diligently attempting to litigate these cases." *Id.* Thus, at least three of the factors pertinent under Rule 41(b)—the public's interest in expeditious resolution of litigation, the court's need to manage its docket, and the risk of prejudice to the defendants all weight in favor of dismissal of plaintiffs' claims.

Additionally, plaintiffs' continued failure to pay discovery sanctions despite clear and explicit orders, *see* Dkt. No. 97, indicates the lack of availability of less drastic alternatives. Moreover, while the public policy favoring disposition of cases on their merits usually counsels against dismissal, the history of plaintiffs' unexcused delay, bad faith, and failure to respond to the Court's orders, *see* Dkt. No. 97, shows that it is unlikely that plaintiffs' claims can be resolved on their merits and that the entry of default against them was the result of excusable neglect. While the assertion of affirmative claims by the Stroud parties suggests a possibility of a dispute concerning the ownership of the Simone Materials, the Court's dismissal of those claims with prejudice in *Brown v. Stroud* based on failure to state a claim despite multiple opportunities to replead, *see* Dkt. No. 337, No. 08-cv-02348 JSW, indicates that this factor also supports the entry of default judgment. Thus, on balance, both the factors under Rule 41(b) and the similar *Eitel* factors support the

dismissal of plaintiffs' claims and entry of default judgment against them.

In their consolidated opposition to the motions for default judgment in the three related cases, the Stroud parties make three primary arguments for why the default motions should be denied and the default order vacated: (1) that the default order should be vacated pursuant to Federal Rule of Civil Procedure 60(b) because the Court's findings in that order that Robinson has had a long-time representation and involvement with the Stroud parties, and that the Stroud parties and their counsel have acted in bad faith, are contrary to the facts; (2) that the default order is void under Federal Rule of Civil Procedure 60(b)(4) because the substitute motion was not properly served on Scarlett Stroud and, therefore, the Court did not have personal jurisdiction over her; and (3) that the default order should be vacated under Federal Rule of Civil Procedure 55 on the basis that "the default was not willful" because Scarlett Stroud had not been appointed as a representative of the Estate and thus was not a proper party to be substituted at the time of the substitution motion. Dkt. No. 115.

These arguments were made by the Stroud parties in support of their motion for reconsideration of the Court's order imposing terminating sanctions. Dkt. Nos. 107, 107-1, 108. In its May 8, 2013, order on the motion for reconsideration, the Court expressly found that service on Scarlett Stroud was sufficient and, while the Court granted the motion for reconsideration to the extent Scarlett Stroud was substituted in before November 20, 2012, the Court found no basis for vacating the sanctions as the further OSC and the order imposing sanctions were not issued until *after* Scarlett Stroud was a proper party to this action. Dkt. Nos. 87, 97, 121. The declaration Robinson submitted in support of the motion for reconsideration also argued that the default order should be vacated because there is no support for the finding that Robinson has had a long-time representation and involvement with the Stroud parties and there is no showing of bad faith by the Stroud parties. Dkt. No. 107-1. By denying the request to vacate the sanctions, the Court implicitly rejected this argument. In their opposition to the motion for default judgment plaintiffs do not provide any new reasons for vacating the default order. Because the

District Court has determined that dismissal of plaintiffs' claims is warranted, and plaintiffs have not demonstrated any legitimate basis for relief from the District Court's order of dismissal, the entry of default judgment against plaintiffs is proper.

**IV. CONCLUSION**

The undersigned Magistrate Judge RECOMMENDS to the District Court to GRANT defendants' motion for default judgment and DISMISS plaintiffs' claims for copyright infringement and unfair competition WITH PREJUDICE.

Defendants must serve plaintiffs with this order in a manner to ensure notice.

Any party may object to this recommendation within 14 days after being served with a copy. Fed. R. Civ. P. 72(b).

IT IS SO ORDERED.

Date: March 31, 2014

Nathanael M. Cousins
United States Magistrate Judge